**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ORALDENT LTD.,

    Plaintiff,                                                Civil Action No.: 1:20-cv-00304

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

    Defendants.

**COMPLAINT**

Plaintiff, Oraldent Ltd., ("Oraldent" or "Plaintiff") hereby files this Complaint against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and for its Complaint hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq. 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant domain names and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Defendant

Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiff's trademark. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademark to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3. This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's POWER FLOSS trademark, which is covered by U.S. Trademark Registration No. 4,747,510. The registration is valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registration for the trademark constitutes prima facie evidence of validity and of Plaintiff's exclusive right to use the trademark pursuant to 15 U.S.C. § 1057(b). A genuine and authentic copy of the U.S. federal trademark registration certificate for the POWER FLOSS trademark is attached as Exhibit 1.

//

//

4. Below is a link and the screenshot of where Oraldent's authentic POWER FLOSS products can be purchased from:



https://shop.curaprox.us.com/useful-helpers/177-powerfloss-oral-irrigator.html

5. The Defendants operate as a ring of counterfeiters operating on e-commerce sites such as Amazon, eBay and, Alibaba. E-commerce giant Alibaba has even formed a special task force to root out illegal counterfeiting rings. According to Alibaba, telltale indications of a counterfeiting ring and its affiliated manufacturing source in action are the use of fictitious identities that are adopted to provide the counterfeiting ring with the ability to play whack-a-mole with authorities.

# Fighting China's counterfeits in the online era

Xinhua | Updated: 2017-09-19 14:20



BEIJING - A secret team in Chinese e-commerce giant Alibaba has the task of pretending to be online consumers who test-buy purchases from the billion-plus products on its platforms.

Alibaba's Anti-Counterfeiting Special Task Force, formed last year, actively works with local law enforcement agencies, said Qin Seng.

"After we clean up online shops selling counterfeits, the counterfeiters usually change their identities and places of dispatch, using more covert means to continue selling online," Qin said.

The team uses big data to identify counterfeits and the vendors, affiliated dealers and factories suspected of producing or selling counterfeit items. They pass evidence to the public security, administration of commerce and industry, quality inspection, food and drug supervision and other law enforcement agencies. At the same time, they investigate the evidence in the field.

The team faces many risks in their offline probes.

"Most counterfeiting dens are hidden and well-organized. For example, we encountered a village producing counterfeits. The villagers installed cameras everywhere and when they saw outsiders entering, they became vigilant and even threatened us," Qin said.

www.chinadaily.com.cn/business/2017-09/19/content_32200290.htm

6. Plaintiff's investigation shows that the telltale signs of an illegal counterfeiting ring are present in the instant action. For example, Schedule A shows the use of store names that employ no normal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used online research shows that there is no known address for the company. Thus, the Defendant Internet Stores are using fake online storefronts designed to appear to be selling genuine Plaintiff products, while selling inferior imitations of Plaintiff's products. The Defendant Internet Stores also share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting

operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's registered trademark, as well as to protect unknowing consumers from purchasing unauthorized POWER FLOSS products over the Internet. Lastly, Plaintiff's investigation has discovered that one of the named defendants in the present action is a factory that produces thousands of products a month that appear to be supplied to the rest of the counterfeiting ring which are unauthorized and counterfeit copies of the POWER FLOSS products:









5

The factory also specifically supplies text descriptions it suggests for the Defendant Online Stores use to describe the counterfeit products:

> Don't be afraid of your next trip to the dentist. Practicing good oral hygiene at home has never been easier, thanks to the Power Floss.
> Flossing is one of the most important elements in taking care of your teeth, but so many people hate the painful task. With the Power Floss, you can gently remove plaque causing debris and clean those hard-to-reach surfaces, all with this pain-free device. As seen on TV, the Power Floss uses air and water to delicately remove what brushing missed. Just fill with water, point, and press to power. The air infusion technology gently blasts away unwanted particles and flushes out crevices for healthy teeth that are sure to please your dentist. You can also fill the Power Floss with mouthwash to freshen as you floss. The ergonomic design and low profile tip helps reach the back teeth and is perfect for keeping braces, bridgework or other dental work clean. Never again worry about getting floss stuck between teeth or dealing with the pain of flossing. Get fast, easy and pain-free results with Power Floss.
> No batteries or cords
> Power Floss is powered by air
> Ideal for braces, crowns, sensitive gums and other dental work

Defendant factory advises other Defendants "if you do business online internationally, we suggest you order the product without silica gel in order to ship by air, product can be order without box packaging to reduce size."

> 备注：产品里包含一包干燥剂 如果是空运请说明不需要干燥  产品材料：ABS +PC  克重 48G  含彩盒包装92克， 常规彩盒一箱160只  51.5*47*55.5cm/160pcs  16KG                     泡壳包装价格贵1元  克重95G  包装尺寸26.5*15*5cm
> 包装可以按照客户要求定制。
> 做跨镜电商的客户建议空运去掉干燥剂， 产品可以散装 体积小

7. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each defendant has offered to sell and ship infringing products into this Judicial District.

**THE PLAINTIFF**

8. Plaintiff, Oraldent Ltd., is a United Kingdom company that maintains its principal place of business at Bicton Industrial Estate, Kimbolton, Cambs UNITED KINGDOM PE280LF. Plaintiff is engaged in the business of manufacturing, distributing and retailing high quality dental instruments such as the POWER FLOSS line of oral irrigators and cleaning instruments, including within the Northern District of Illinois District (collectively, the "Plaintiff Products") under the Federally registered trademark POWER FLOSS. Defendants' sales of Counterfeit Products in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

9. Plaintiff's brand, symbolized by the POWER FLOSS trademark, is a recognized symbol of high-quality dental products. The POWER FLOSS trademark is distinctive and identifies the merchandise as goods from Plaintiff. The registration for the POWER FLOSS trademark constitutes prima facie evidence of its validity and of Plaintiff's exclusive right to use the POWER FLOSS trademark pursuant to 15 U.S.C. § 1057 (b).

10. The POWER FLOSS trademark is distinctive and identifies the merchandise as goods from Plaintiff. The registration for the trademark constitutes prima facie evidence of validity and of Plaintiff's exclusive right to use the trademark pursuant to 15 U.S.C. § 1057(b). The POWER FLOSS trademark has been continuously used and never abandoned.

11. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the POWER FLOSS trademark. More importantly, because Plaintiff's products are oral dental medical equipment, Plaintiff maintains strict quality control standards for all products featuring the Plaintiff's POWER FLOSS mark. Plaintiff's authentic products are only manufactured in Malaysia, using medical grade plastic to ensure safety of the products. Oraldent's POWER FLOSS products require multiple molds to make and has a unique

ball bearing system in order to generate the water pressure per shot required to make the products effective. As a result, products bearing the POWER FLOSS trademark is widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

## THE DEFENDANTS

12. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit POWER FLOSS products to consumers within the United States, including Illinois and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

13. The success of the POWER FLOSS brand has resulted in its counterfeiting. Defendants conduct their illegal operations through fully interactive commercial websites hosted on various e-commerce sites, such as eBay, Wish, Alibaba, Ali Express, Tophatter, DHGate, etc. ("Infringing Websites" or "Infringing Webstores"). Each Defendant targets consumers in the United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products that violate Plaintiff's intellectual property rights ("Counterfeit Products") to consumers within the United States, including the State of Illinois.

14. Defendants intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiff from learning Defendants' true identities

8

and the exact interworking of Defendants' illegal counterfeiting operations. Through their operation of the Infringing Webstores, Defendants are directly and personally contributing to, inducing and engaging in the sale of Counterfeit Products as alleged, often times as partners, co-conspirators and/or suppliers. Upon information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products.

15. Upon information and belief, at all times relevant hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of the POWER FLOSS trademark, including its exclusive right to use and license such intellectual property and the goodwill associated therewith. Defendant factory provides product with POWER FLOSS trademark on the products, the packaging, and even supplies printed product instructions to be sold with counterfeit products. The printed product instructions specifically states: "POWER FLOSS is a trademark of Oraldent Ltd." see screenshot from Defendants' Online Stores below:



16. Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant domain names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their

9

identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

17. The counterfeit POWER FLOSS products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit POWER FLOSS products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

18. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

19. Further, counterfeiters such as Defendants, typically operate multiple credit card merchant accounts and third-party accounts, such as PayPal, Inc. ("PayPal") accounts, behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

20. Upon information and belief, Defendants also deceive unknowing consumers by using the POWER FLOSS trademark without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for POWER FLOSS products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine POWER FLOSS products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable Defendant domain names owned by Defendants that are the means by which the Defendants could continue to sell counterfeit POWER FLOSS products.

21. Defendants' use of the trademark on or in connection with the advertising, marketing, distribution, offering for sale and sale of the Counterfeit Products is likely to cause and has caused confusion, mistake and deception by and among consumers and is irreparably harming

Plaintiff. Defendants have manufactured, imported, distributed, offered for sale and sold Counterfeit Products using the POWER FLOSS trademark and continue to do so.

22. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the POWER FLOSS trademark in connection with the advertisement, offer for sale and sale of the Counterfeit Products, through, inter alia, the Internet. The Counterfeit Products are not genuine POWER FLOSS Plaintiff Products. The Plaintiff did not manufacture, inspect or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution. Each Infringing Webstore offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

23. Defendants also deceive unknowing consumers by using the POWER FLOSS trademark without authorization within the content, text, and/or meta tags of the listings on Infringing Webstores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for POWER FLOSS Products and in consumer product searches within the Webstores.

24. Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling Counterfeit Goods that infringe upon the POWER FLOSS trademark unless preliminarily and permanently enjoined.

25. Defendants' use of the POWER FLOSS trademark in connection with the advertising, distribution, offering for sale, and sale of counterfeit POWER FLOSS products, including the sale of counterfeit POWER FLOSS products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26. Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

27. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered POWER FLOSS trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The POWER FLOSS trademark is a highly distinctive mark. Consumers have come to expect the highest quality from Plaintiff's products provided under the POWER FLOSS trademark.

28. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the POWER FLOSS trademark without Plaintiff's permission.

29. Plaintiff is the exclusive owner of the POWER FLOSS trademark. Plaintiff's United States Registration for the POWER FLOSS trademark (Exhibit 1) is in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the POWER FLOSS trademark, and are willfully infringing and intentionally using counterfeits of the POWER FLOSS trademark. Defendants' willful, intentional and unauthorized use of the POWER FLOSS trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

30. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known POWER FLOSS trademark.

32. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit POWER FLOSS products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

33. Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

34. Defendants' promotion, marketing, offering for sale, and sale of counterfeit POWER FLOSS products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit POWER FLOSS products by Plaintiff.

35. By using the POWER FLOSS trademark in connection with the sale of counterfeit POWER FLOSS products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit POWER FLOSS products.

36. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit POWER FLOSS products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, et seq.)

38. Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

39. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit POWER FLOSS products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine POWER FLOSS products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

40. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

41. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## COUNT IV
### CIVIL CONSPIRACY

42. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

43. Plaintiff is informed and believe and thereon allege that Defendants knowingly and voluntarily entered into a scheme and agreement to engage in a combination of unlawful acts and misconduct including, without limitation, engaging in a collaborated efforts to the distribution,

15

marketing, advertising, shipping, offering for sale, or sale of fake POWER FLOSS Products are a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, et seq.

44. The intent, purpose and objective of the conspiracy and the underlying combination of unlawful acts and misconduct committed by the Defendants was to undermine ORALDENT and its business by unfairly competing against it as described above.

45. The Defendants each understood and accepted the foregoing scheme and agreed to do their respective part, to further accomplish the foregoing intent, purpose and objective. Thus, by entering into the conspiracy, each Defendant has deliberately, willfully and maliciously permitted, encouraged, and/or induced all of the foregoing unlawful acts and misconduct.

46. As a direct and proximate cause of the unlawful acts and misconduct undertaken by each Defendant in furtherance of the conspiracy, ORALDENT has sustained, and unless each Defendant is restrained and enjoined, will continue to sustain severe, immediate and irreparable harm, damage and injury for which ORALDENT has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily preliminarily, and permanently enjoined and restrained from:

　　a. using the POWER FLOSS trademark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine POWER FLOSS product or is not authorized by Plaintiff to be sold in connection with the POWER FLOSS trademark;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine POWER FLOSS product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the POWER FLOSS trademark;

c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit POWER FLOSS products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the POWER FLOSS trademark and damaging Plaintiff's goodwill;

e. otherwise competing unfairly with Plaintiff in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff trademark, including the POWER FLOSS trademark, or any reproductions, counterfeit copies, or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the online marketplace accounts, the Defendant domain names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit POWER FLOSS products; and

h. operating and/or hosting websites at the Defendant domain names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the POWER FLOSS trademark or any reproduction, counterfeit copy or colorable imitation thereof that

17

is not a genuine POWER FLOSS product or not authorized by Plaintiff to be sold in connection with the POWER FLOSS trademark; and

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through h, above;

3) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as, but not limited to, Amazon, ContextLogic, Tophatter, DHGate, and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant domain names, and domain name registrars, shall:

   a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit POWER FLOSS products using the POWER FLOSS trademark, including any accounts associated with the Defendants listed on Schedule A;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit POWER FLOSS products using the POWER FLOSS trademark; and

   c. take all steps necessary to prevent links to the Defendant domain names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant domain names from any search index; and

5) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the POWER FLOSS trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the POWER FLOSS trademark;

7) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

DATED: January 15, 2020

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
111 West Jackson Boulevard, Suite 1700
Chicago, Illinois 60604
Telephone: 312-675-6079
E-mail: keith@vogtip.com

**ATTORNEY FOR PLAINTIFF**